**SO ORDERED.**

**SIGNED August 22, 2014.**



```
_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
```
_____

```
         UNITED STATES BANKRUPTCY COURT
          WESTERN DISTRICT OF LOUISIANA

IN RE:

JOHNNY HOLLIER,                        CASE NO. 09-51789

    Debtor
----------------------------------------------------------------
KARR PLEX, LTD. and
KENNY A. SHERECK,

    Plaintiff

VERSUS                                 ADVERSARY NO. 12-5065

JOHNNY HOLLIER,

    Defendant
----------------------------------------------------------------
                   REASONS FOR DECISION
----------------------------------------------------------------
```

The present matter before the court is an adversary proceeding brought by Kenny Shereck and Karr Plex Ltd. (collectively, "Shereck") against the debtor, Johnny Hollier. Shereck seeks to exclude a state court judgment from the discharge under 11 U.S.C. § 523(a). The court took the matter under advisement following a

trial on the merits.  After considering the record, the parties' arguments, and the relevant authorities, the court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§1334 and 157(a).  This matter is a core proceeding in which this court may enter a final order pursuant to  28 U.S.C. §157(b)(2)(I) and (J) and <u>Stern v. Marshall</u>, ___ U.S. ___, 131 S.Ct. 2594 (2011).  The following Reasons for Decision shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

This dispute arises out of a used car sales agreement between Shereck and Hollier. The parties' agreement was never documented and the trial record includes often conflicting and contradictory testimony on the nature and terms of the parties' agreement. Shereck contends that Hollier orally agreed to sell Shereck's cars on consignment, and that Hollier agreed to pay Shereck a "consigned value" and a $500 commission for each car he sold. Hollier also agreed to provide Shereck with office space at Used Cars of Acadiana. Plaintiffs ultimately consigned as many as 10-11 cars under this oral agreement.  The present case centers on six cars delivered to Hollier in or around August 2006:

-2-

1)   1997 Jaguar XK8
        2)   1999 Mitsubishi Montero
        3)   2002 BMW 325ci
        4)   1999 BMW 528
        5)   2003 Mercury Mountaineer
        6)   2002 Kia Sadona

(Plaintiffs' Trial Exhibit ("Pl. Trial Exh.") Nos. 2-7). Shereck contends that Hollier and Used Cars of Acadiana did not pay him the consigned values or the commissions for these vehicles.

The parties, however, apparently modified their agreement with respect to these six cars because, according to Hollier's testimony, Shereck issued bills of sale and transferred the titles for these vehicles to Hollier, actions that are not consistent with a true consignment relationship. Hollier testified that Shereck agreed to allow Hollier to obtain "floor financing" on the six cars from Automotive Finance Corporation ("AFC"), and that Shereck agreed to this arrangement because he would receive regular (albeit, smaller) payments before the cars were actually sold. The record includes statements showing payments to AFC pursuant to these floor financing arrangements. (Defendant's Trial Exhibit ("Def. Trial Exh.") No. 3). The record also includes copies of checks reflecting payments to Shereck from August through December 2006. (Def. Trial Exh. No. 4; Pl. Trial Exh. No. 11 at Attachment 18). Hollier testified that he made additional payments to Shereck but could not produce copies of any checks or other records that

document these payments.[1]  Once the cars were sold, the proceeds of the sales were used to pay off the floor financing from AFC.  The transfer of the titles to Hollier is consistent with this floor financing arrangement because AFC would have required the titles as a condition of releasing funds to Hollier.  In sum, the record reflects that Shereck was not paid when the cars were delivered or when they were sold, but instead was to receive multiple payments after the cars were delivered to Hollier.

Shereck contends that Hollier failed to fully pay for the cars.  The total commissions and "consigned values" of the cars delivered to Hollier was $68,900. (15th JDC Trial Ruling, Bankruptcy Court Dckt. No. 34, Attachment 1 at 12).  The record includes a 2006 Internal Revenue Service Form 1099 provided by Hollier to Shereck showing non-wage payments totaling $27,636.45 to Shereck. (Pl. Trial Exh. No. 11 at Attachment 11).  Hollier contends that this Form 1099 represents payments made to Shereck for his cars

---

[1] At trial, Hollier attempted to introduce a list of checks showing these additional payments to Shereck. The list was prepared for trial, but Hollier could not produce copies of the original checks that were used to prepare the list.  Shereck timely objected to the list and the court took the objection under advisement.  The court sustains the objection on the grounds that this proposed exhibit does not comply with the requirements of Federal Rule of Evidence 1006 (Hollier could not make the checks available for inspection and it does not appear that the checks were voluminous) and it is hearsay that does not fall within an exception to the hearsay rule.

-4-

prior to December 31, 2006. The record does not show any additional payments to Shereck or Karr Plex in 2007. To the contrary, Hollier stopped payment on a January 2007 check to Shereck totaling $2,000. (Pl. Trial Exh. 11 at Attachments 8, 9). Shereck and Karr Plex subsequently filed suit in state court against Hollier and Used Cars of Acadiana alleging breach of contract and fraud. Hollier was represented in that case, but his counsel withdrew prior to trial and Hollier did not attend the trial of the case. Following the trial, the 15th Judicial District Court entered a judgment against Hollier and Used Cars of Acadiana for $70,967. (15th JDC Trial Ruling, Dckt. No. 34, Attachment 1 at 12). Hollier filed for relief under Chapter 7 of the Bankruptcy Code on December 7, 2009. The debtor identified Shereck and Karr Plex as creditors on his statement of financial affairs, but failed to list them on his schedule of creditors. The debtor received a discharge on March 29, 2010. In January 2012, plaintiffs moved to re-open the case in order to request leave to assert a non-dischargeability claim. The debtor responded with a motion requesting leave to add Shereck and Karr Plex as creditors. The court found that the debtor had satisfied the requirements to add creditors under In re Stone, 10 F.3d 285 (5th Cir. 1994), and granted Hollier's motion.

Shereck then filed the present adversary proceeding seeking a

declaration that the state court judgment is non-dischargeable. Shereck contends that the judgment is non-dischargeable under 11 U.S.C. § 523(a)(4) on the grounds of fiduciary fraud and/or defalcation, embezzlement, and larceny. Shereck also asserts a claim for non-dischargeability under section 523(a)(6) on the grounds of willful and malicious injury. Shereck moved for summary judgment based on preclusion. Collateral estoppel applies to bankruptcy proceedings and can be invoked to prevent the re-litigation of issues previously decided by a non-bankruptcy court. Grogan v. Garner, 498 U.S. 111 (1991). In order to invoke collateral estoppel, a plaintiff must show that the elements of a non-dischargeability claim were actually litigated and that the determination of these elements was essential to the judgment. Id. Here, Shereck asserted a breach of contract and fraud claim in state court. However, after reviewing the state court record and the transcript of the state court's ruling, the court could not determine whether the state court's judgment was based on a finding of fraud or even whether fraud was actually litigated. Accordingly, the court granted partial summary judgment as to the amount of Shereck's claim based on the state court judgment. The court denied summary judgment with respect to whether this debt was non-dischargeable.

**DISCUSSION**

A creditor has the burden of proof in an action to determine the dischargeability of a debt. <u>Grogan v. Garner</u>, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." <u>Hudson v. Raggio & Raggio, Inc. (In re Hudson)</u>, 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each an every element of a statutory exception to discharge under 11 U.S.C. § 523 <u>et</u> <u>seq</u>. by a preponderance of the evidence.

**A. Non-Dischargeability Under 11 U.S.C. § 523(a)(4) --Fraud or Defalcation by a Fiduciary, Larceny, and Embezzlement**

**1. Elements of a Claim Under § 523(a)(4).**

The Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4). This exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." <u>Miller v. J.D. Abrams Inc. (In re Miller)</u>, 156 F.3d 598, 602 (5th Cir. 1998) (quoting <u>In re Boyle</u>, 819 F.2d

-7-

583, 588 (5th Cir. 1987)). With respect to embezzlement and larceny, the manner in which the debtor comes into possession of the property determines which definition applies. For purposes of section 523(a)(4), embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." <u>In re Miller</u>, 156 F.3d at 602 (emphasis added). Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." <u>In re Hayden</u>, 248 B.R. 519, 526 (N.D. Tex. 2000) (emphasis added).

### 2. Was There a Fiduciary Relationship Within the Meaning of § 523(a)(4)?

In order to establish a non-dischargeability claim for fiduciary fraud or defalcation, Shereck must establish that his relationship with Hollier fell within the narrow confines of section 523(a)(4). Not all fiduciary relationships under state law fall within section 523(a)(4). The type of relationship required to trigger liability for fraud or defalcation under section 523(a)(4) is determined by federal law. A fiduciary under section 523(a)(4) is limited to cases involving technical or express trusts. <u>In re Bennett</u>, 989 F.2d 779, 784 (5th Cir. 1993) (citing <u>In re Angelle</u>, 610 F.2d 1335 (5th Cir.1980)); <u>see</u> <u>also</u> <u>In re Tran</u>, 151

-8-

F.3d 339, 342 (5th Cir. 1998); In re Schwager, 121 F.3d 177, 186 (5th Cir. 1997). The requisite trust relationship must exist prior to the act creating the debt and without reference to that act. In re Bennett, 989 F.2d at 784; see also In re Tran, 151 F.3d at 342 (trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong). "In other words, the trust giving rise to the fiduciary relationship must be imposed prior to any wrongdoing. The debtor must have been a trustee before the wrong and without any reference to it." In re Bennett, 989 F.2d at 784 (citation omitted). As a result, constructive trusts or trusts *ex malificio* are insufficient to create a fiduciary relationship within the meaning of section 523(a)(4). In re Tran, 151 F.3d at 342. However, the " 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." In re Bennett, 989 F.2d at 784-85 (emphasis added).

Shereck relies on the parties' oral consignment agreement as grounds for the creation of a fiduciary relationship between the parties. This oral agreement does not support a fiduciary fraud or defalcation claim for at least two reasons. First, the record does not support the presence of a true consignment relationship between plaintiffs and Hollier. In a true consignment arrangement the

-9-

consignor entrusts goods with the consignee to sell for the consignor and the consignor retains title to the goods that are consigned. See McGill v. Cochran Sysco Foods, Div. of Sysco Corp.,690 So.2d 952, 955 (La. App. 2 Cir. 1997) (citing C.V. Hill & Co. v. Interstate Electric Co. of Shreveport, 196 So. 396 (La. App. 2d Cir.1940)); In re Marshall, 497 B.R. 3, 13-15 (Bankr. D. Mass. 2013). Here, Shereck executed written bills of sale for each of the six vehicles at issue to Hollier and/or Used Cars of Acadiana. These bills of sale evidence an actual transfer of ownership as opposed to a consignment relationship. Moreover, Hollier testified that Shereck transferred the vehicle titles to him. Finally, Hollier had to represent himself as the owner of the vehicles in order to receive floor financing from AFC, and the record reflects that this floor financing arrangement was done with Shereck's knowledge. The court, therefore, concludes that the transfer of the six vehicles was an actual sale (albeit, subject to the parties' oral installment payment agreement), not a consignment relationship.

Second, even if the parties had entered into a consignment relationship, this relationship does not create the type of fiduciary relationship that falls within section 523(a)(4) unless the consignment proceeds are segregated and unavailable for the consignee's general use. Smallwood v. Howell (In re Howell), 178

-10-

B.R. 730, 733 (Bankr. W.D. Tenn. 1995); see also Freer v. Beetler (In re Beetler), 368 B.R. 720, 726 (Bankr. C.D. Ill. 2007); Lykins v. Thomas (In re Thomas), 2013 WL 6840527 at *15 (Bankr. D. Colo. December 27, 2013). There is no evidence in the record that any of the proceeds for the six vehicles at issue were segregated. Accordingly, Shereck cannot prevail on a non-dischargeability claim under the fiduciary fraud and defalcation prongs of section 523(a)(4).

### 3. Embezzlement and Larceny

With respect to embezzlement and larceny, the manner in which the debtor comes into possession of the property determines which definition applies. Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." In re Miller, 156 F.3d at 602. Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property." In re Hayden, 248 B.R. 519, 526 (N.D. Tex. 2000) (emphasis added).

The record does not support a non-dischargeability claim under the embezzlement and larceny prongs of section 523(a)(4) for at least two reasons. First, ownership of the vehicles was transferred to Hollier according to the sale documents in the

-11-

record. In return, Hollier orally agreed to pay Shereck a fixed amount on each vehicle in multiple installments. Hollier's failure to pay Shereck the full amount he owed on the six vehicles delivered to Hollier in August 2006 is a breach of that oral agreement, but it does amount to the fraudulent appropriation of Shereck's property.

Second, Shereck has not established that Hollier acted with fraudulent intent. Specifically, a breach of an oral promise to pay does not support a fraud claim unless the debtor did not intend to perform at the moment he made his promise. Matter of Haber Oil Co., Inc., 12 F.3d 426, 439-40 (5th Cir. 1994). Shereck has not established by a preponderance of the evidence that Hollier did not intend to perform when the parties first entered into their agreement. Indeed, Hollier's payments to Shereck from August to December 2006 tend to cut against any such finding. In sum, the court finds against plaintiffs on their non-dischargeability claim under section 523(a)(4) based on embezzlement.

For the same reasons, the court also finds against plaintiffs on their non-dischargeability claim based on larceny. Specifically, because Hollier owned the vehicles (albeit, subject to the parties' oral payment agreement) his actions "did not amount to the taking and carrying away of the property of another..." In re Hayden, 248 B.R. 519, 526 (N.D. Tex. 2000). Nor does the record

-12-

support plaintiffs' allegations that Hollier acted with fraudulent intent.

**B.  Non-Dischargeability Under 11 U.S.C. § 523(a)(6) – Willful and Malicious Injury**

Section 523(a)(6) provides for the non-dischargeability of debts arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity."  Courts have often disagreed over the level of culpability required under section 523(a)(6).  In Kawaauhau v. Geiger, the Supreme Court put some of these disputes to rest. 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).  The Court held that injuries resulting from negligent or reckless conduct are insufficient to satisfy the requirements of section 523(a)(6).  A finding that the debtor engaged in intentional acts that resulted in injury is similarly insufficient.  Id.  Geiger did not, however, resolve all of the questions over the appropriate standard for a section 523(a)(6) claim.  The circuits employ different standards in determining whether a debtor's conduct amounts to a "willful and malicious injury ... to another entity or to the property of another entity." In order for conduct to qualify as willful and malicious under Fifth Circuit precedent, the debtor must act with "either an objective substantial certainty of harm or a subjective motive to cause harm." Williams v. IBEW Local 520 (In re Williams), 337 F.3d

-13-

504, 509 (5th Cir. 2003) (quoting In re Miller, 156 F.3d 598, 606 (5th Cir. 1998)). Injuries covered by section 523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by this provision. 4 Collier on Bankruptcy ¶ 523.12(4) (15th ed. rev.2003).

Here, the basis for non-dischargeability under section 523(a)(6) is Hollier's sale of the last six vehicles and his failure to pay Shereck according to their oral agreement. As far as Hollier's contractual obligation to pay Shereck, a mere breach of contract does not rise to the level of a willful and malicious injury under section 523(a)(6). Some courts have required a showing of tortious conduct in addition to a breach of contract to support a section 523(a)(6) claim. See, e.g., In re Jerich, 238 F.3d. 1202 (9th Cir. 2001) (requiring showing of tortious conduct in connection with the breach of contract). In In re Williams, 337 F.3d 504, 510 (5th Cir. 2003), the Fifth Circuit held that a breach of contract could rise to the level of a willful and malicious injury under section 523(a)(6) without a showing of tortious conduct. However, evidence of a knowing or intentional breach does not, standing alone, state a non-dischargeability claim under section 523(a)(6). The plaintiff must also establish that the debtor intended to injure the plaintiff or that injury was substantially certain to result from the debtor's actions. Id.; In

-14-

re Boring, 45 B.R. 576, 580 (Bankr. M.D. La. 2011) (section 523(a)(6) satisfied where breach of contract involves "intentional or substantially certain injury.") According to the Fifth Circuit, "a knowing breach of a *clear contractual obligation* that is certain to cause injury may prevent discharge under section 523(a)(6)." Williams, 337 F.3d at 510 (emphasis added). Whether the breach rises to the level of a willful and malicious injury turns on "the knowledge and intent of the debtor at the time of the breach." Id.

The key hurdle for Shereck is showing that there was a "clear contractual obligation" arising out of the parties' convoluted, evolving business arrangement and that Hollier knowingly breached that obligation. Based on the state court judgment, Hollier breached the parties' oral agreement by failing to fully pay Shereck for all of the vehicles subject to the AFC floor financing. The total amount of Hollier's liability is thus fixed at the $70,900 awarded by the state court. However, the state court judgment does not establish the extent to which this amount is non-dischargeable under section 523(a)(6). Under Williams, the court must look to Hollier's knowledge and intent at the time he breached his agreement with Shereck and determine whether Hollier committed a knowing breach of a clear contractual obligation that was certain to cause injury. 337 F.3d at 510-11. The parties had an oral

-15-

agreement to pay for the six vehicles in installments. The record reflects multiple payments to Shereck from August through December 2006 that are consistent with this agreement. However, the record also reflects that these payments did not total the $68,900 owed on the six vehicles at issue in this case. Specifically, the 2006 Form 1099 filed by Hollier after December 2006 shows payments to Shereck totaling $27,636. In January 2007, Hollier wrote a $2,000 check to Shereck, but subsequently ordered his bank to stop payment on the check. As a result, Shereck's account was overdrawn.

The court concludes that Hollier's actions in January 2007 amount to a knowing breach of a clear contractual obligation that was certain to cause injury. Specifically, the stop payment order was a deliberate act by Hollier that was substantially certain to cause injury. Hollier also knew that he had only made payments to Shereck totaling a third of the value of the six vehicles at issue in light of the Form 1099 filed for 2006. The record does not reflect any additional payments to Shereck after the stop payment order, nor does it reflect any justification for Hollier's stop payment order or the failure to make additional payments. The failure to pay Shereck the remaining value of the vehicles was substantially certain to cause harm to Shereck because he lost at least two-thirds of the value of the vehicles he purchased and then transferred to Hollier for re-sale. However, this finding does not

support the non-dischargeability of the entire state court judgment because the record does not support Shereck's contention that Hollier breached the parties' agreement prior to the January stop-payment order. The record shows that, prior to January 2007, Hollier made payments to Shereck that appear to be consistent with their oral agreement. The court, therefore, concludes that $43,264 of the $70,900 judgment entered by the state court ($70,900 minus the $27,636 of payments reflected on the Form 1099) results from willful and malicious conduct by Hollier and is excepted from the discharge under section 523(a)(6).[2]

### CONCLUSION

For the foregoing reasons, the court finds for the plaintiffs on their claims under 11 U.S.C. §§ 523 (a)(6). Plaintiff's claim is fixed at $70,900. Of this amount, **$43,264 is nondischargeable** under 11 U.S.C. §523(a)(6). Plaintiffs shall submit a judgment in conformity with the court's ruling within thirty (30) days.

###

---

[2] The Court cannot determine whether the payments reflected on the Form 1099 are payments on the six vehicles at issue, payments on other vehicles, or other unrelated payments made to Shereck during 2006. Neither party maintained or produced any records that account for the purpose or application of these payments. Given that Shereck has the burden of proof on a non-dischargeability claim and that Fifth Circuit precedent requires this court to construe discharge exceptions in favor of the debtor, the court concludes that the $27,636 in payments reflected on Form 1099 should be credited to the six vehicles at issue in this case.

-17-